Todd M. Friedman (216752)
Law Offices of Todd M. Friedman, P.C.
23586 Calabasas Rd, Suite 105
Calabasas, CA 91302
Phone: 323-306-4234
tfriedman@toddflaw.com
*Attorney for Plaintiff*

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| DANIEL N. HARRINGTON,<br><br>Plaintiff,<br><br>-vs-<br><br>NEWREZ LLC d/b/a SHELLPOINT MORTGAGE SERVICING; EQUIFAX INFORMATION SERVICES LLC; EXPERIAN INFORMATION SOLUTIONS, INC.; TRANS UNION LLC; and DOES 1-10, inclusive,<br><br>Defendants. | Case No.<br><br>**COMPLAINT**<br>**JURY TRIAL DEMANDED**<br><br>1. Violations of Rosenthal Fair Debt Collection Practices Act<br><br>2. Violation of the California Consumer Credit Reporting Agencies Act<br><br>3. Violations of the Fair Credit Reporting Act |

## I. INTRODUCTION

1. This is an action for damages brought by an individual consumer for Defendants' violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681, et seq. ("FCRA"), the California Consumer Credit Reporting Agencies Act, Cal. Civ. Code § 1785.1, et seq. ("CCRAA"), and the Rosenthal Fair Debt Collection Practices Act, Cal. Civ. Code § 1788, et seq. ("RFDCPA"), which regulate the collection, dissemination, and use of consumer credit information. Plaintiff alleges that Defendant Newrez LLC d/b/a Shellpoint Mortgage Servicing

("Newrez") furnished false and inaccurate information to consumer reporting agencies concerning Plaintiff's residential mortgage loan, reporting the loan as 120 or 180 days past due for six or seven consecutive months in 2025 with no preceding 30-, 60-, or 90-day delinquency, while Plaintiff was making payments that Newrez accepted and was working with Newrez to complete a loan modification, despite knowing or having reason to know that the information was inaccurate and disputed. Plaintiff further alleges that Defendants Equifax Information Services LLC ("Equifax"), Experian Information Solutions, Inc. ("Experian"), and Trans Union LLC ("TransUnion") (together, the "Credit Bureau Defendants") violated the FCRA by failing to follow reasonable procedures to assure the maximum possible accuracy of Plaintiff's consumer reports and by failing to conduct reasonable reinvestigations of Plaintiff's disputes.

## II. JURISDICTION AND VENUE

2. This Court has federal question jurisdiction over Plaintiff's FCRA claims pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1681p, and supplemental jurisdiction over Plaintiff's CCRAA and RFDCPA claims pursuant to 28 U.S.C. § 1367(a) because those claims arise from the same case or controversy.

3. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because Defendant Newrez resides in this District, and a substantial part of the acts and omissions giving rise to the claims occurred in this District, including Newrez's decisions to furnish, and to continue furnishing, the inaccurate information at issue, and the receipt, maintenance, and dissemination of that information by the Credit Bureau Defendants.

4. Defendant Newrez is a limited liability company with its principal place of business at 1100 Virginia Drive, Suite 125, Fort Washington, Pennsylvania 19034, in this District, and is therefore at home in Pennsylvania. Newrez is also authorized to conduct business in the State of California, regularly conducts business throughout the State of California, maintains a registered agent for service of process in California, and directs borrower payments to a remittance address in City of Industry, California. Defendants Equifax, Experian, and TransUnion are nationwide consumer reporting agencies that regularly conduct business throughout the United States, including in Pennsylvania and in this District, where, on

information and belief, they receive and process consumer disputes (TransUnion, for example, maintains a consumer-dispute processing address in Chester, Pennsylvania), and Plaintiff's claims against them arise out of and relate to their receipt, maintenance, and dissemination of information furnished by Newrez from this District and their handling of Plaintiff's disputes of that information.

## III. PARTIES

5. Plaintiff DANIEL N. HARRINGTON ("Plaintiff") is a natural person currently residing in Ada County, Idaho, and is a "consumer" as defined by 15 U.S.C. § 1681a(c) and Cal. Civ. Code § 1785.3(b), and a "debtor" as defined by Cal. Civ. Code § 1788.2(h).

6. At all relevant times herein, Defendant Newrez, a Delaware limited liability company doing business as Shellpoint Mortgage Servicing, was engaged in the business of servicing residential mortgage loans and, in the ordinary course of business, regularly furnished consumer credit information to consumer reporting agencies and regularly engaged in the collection of consumer debts. Newrez is an "information furnisher" as defined by 15 U.S.C. § 1681s-2 and Cal. Civ. Code § 1785.25, a "debt collector" as defined by Cal. Civ. Code § 1788.2(c), and a "person" as defined by Cal. Civ. Code § 1785.3(k). Newrez's mortgage statements state that "Newrez LLC dba Shellpoint Mortgage Servicing is a debt collector."

7. At all relevant times herein, Defendants Equifax, Experian, and TransUnion were each a "consumer reporting agency" as defined by 15 U.S.C. § 1681a(f) and Cal. Civ. Code § 1785.3(d). Equifax is a Georgia limited liability company headquartered in Atlanta, Georgia; Experian is an Ohio corporation headquartered in Costa Mesa, California; and TransUnion is a Delaware limited liability company headquartered in Chicago, Illinois. Each regularly assembles and evaluates consumer credit information for the purpose of furnishing consumer reports to third parties.

8. The above-named Defendants, and their subsidiaries and agents, are collectively referred to as "Defendants." The true names and capacities of the Defendants sued herein as DOE DEFENDANTS 1 through 10, inclusive, are currently unknown to Plaintiff, who therefore sues such Defendants by fictitious names. Each of the Defendants designated herein

as a DOE is legally responsible for the unlawful acts alleged herein. Plaintiff will seek leave of Court to amend the Complaint to reflect the true names and capacities of the DOE Defendants when such identities become known.

9. Plaintiff is informed and believes that at all relevant times, each and every Defendant was acting as an agent and/or employee of each of the other Defendants and was acting within the course and scope of said agency and/or employment with the full knowledge and consent of each of the other Defendants. Plaintiff is informed and believes that each of the acts and/or omissions complained of herein was made known to, and ratified by, each of the other Defendants.

## IV. FACTUAL ALLEGATIONS

10. In August 2016, Plaintiff and Heather Harrington obtained a thirty-year residential mortgage loan in the original principal amount of $417,000, secured by Plaintiff's primary residence at 2761 N. Big Sky Place, Eagle, Idaho (the "Loan"). Newrez's loan number ends in 0352. The Loan is a consumer debt incurred primarily for personal, family, or household purposes.

11. Plaintiff and Ms. Harrington divorced by Judgment and Decree entered August 31, 2022 by the District Court of the Fourth Judicial District of the State of Idaho, Ada County. Under the Decree, Ms. Harrington's interest in the home was to be conveyed to Plaintiff upon his payment to her of a lump sum, and until then she remained on the note and deed of trust. Plaintiff alone has paid the Loan since at least 2020 and has not communicated with Ms. Harrington since December 2024.

12. Before Newrez began servicing the Loan, Plaintiff's prior servicer provided a COVID-19 related payment accommodation, under which Plaintiff was not delinquent on the Loan. Newrez's own statements carry a deferred principal balance of $28,703.19 on the Loan.

13. On or about February 6, 2025, servicing of the Loan was transferred to Newrez. Newrez's own loan history records the Loan as a "New Loan" on that date with a September 1, 2024 due date. Newrez told Plaintiff that it did not recognize the prior servicer's

accommodation and that, to obtain relief, Plaintiff would have to complete a trial payment period and both borrowers would have to sign the modification paperwork.

14. Beginning in April 2025, and continuing through January 2026, Newrez charged Plaintiff's account for property inspections, a skip trace, title costs, foreclosure costs, and attorney's fees paid to a foreclosure law firm, McCarthy & Holthus, LLP, while Plaintiff was seeking a loan modification.

15. Throughout 2025, Plaintiff continued to make payments on the Loan, which Newrez accepted, including payments in May, June, July, August, September, and October 2025. On information and belief, Newrez applied these payments to the oldest unpaid installments, dating back to September 2024, rather than to the current month, with the effect that the Loan continued to appear delinquent.

16. In or about summer 2025, Newrez placed Plaintiff on a trial payment plan. On August 28, 2025, a Newrez representative instructed Plaintiff in writing to "continue to make your trial payments each month until the modification is completed." That same day, Newrez's website blocked Plaintiff's attempt to make a payment with the message "This loan has a payment stop," and Newrez told Plaintiff in writing that he "will not be able to make payments online until the loan modification agreement is returned."

17. The modification agreement prepared by Newrez and its vendor, ServiceLink, described Plaintiff and Ms. Harrington as "husband and wife," which was untrue. On August 29, 2025, Plaintiff informed Newrez of the 2022 divorce and sent Newrez the Decree, and he sent it again on September 4, 2025. Newrez responded by demanding additional documents, including a letter of explanation, a quitclaim deed from Ms. Harrington, and a marital settlement agreement, even though the Decree sets out the disposition of the property.

18. On September 10, 2025, Newrez confirmed that it could modify the Loan without removing Ms. Harrington if she signed. For weeks afterward, the ServiceLink signing portal continued to display "husband and wife." On September 19, 2025, Newrez's representative acknowledged that "the verbiage is incorrect," and Newrez ultimately sent a revised paper agreement by FedEx, delivered September 30, 2025.

19. On October 1, 2025, Plaintiff signed the corrected agreement, which identifies him as "an unmarried person," before a notary and returned it to Newrez. Ms. Harrington did not sign. On October 21, 2025, Newrez told Plaintiff that it had "only sent the one agreement to the mailing address on file," which was Plaintiff's, and it did not send an agreement to Ms. Harrington until October 23, 2025.

20. On November 19, 2025, Newrez told Plaintiff that the modification "has been denied due to Heather not returning the agreement within the allowed time frame," and on November 20, 2025, that it "has already been closed, and a new application is required." Plaintiff reapplied, and on December 10, 2025, Newrez approved a new modification subject to a three-month trial payment plan. Plaintiff wired the first trial payment, $3,403.42, on December 31, 2025.

21. On January 2, 2026, Plaintiff asked Newrez what was needed "to cure the foreclosure," and Newrez estimated the total at "$32,000." That same day, Plaintiff wired $36,488.16, which Newrez applied to bring the Loan current, including foreclosure costs ($1,113.75), attorney's costs ($607.50), and title, recording, inspection, and late charges.

22. Newrez's January 3, 2026 mortgage statement is internally contradictory. It states a "Next Due Date" of February 1, 2026, a "Reinstatement Amount" of $0.00, a "Contractual Due Date" of April 1, 2026, and that the Loan is on a Loan Modification Trial Period Plan, yet it also states an "Accelerated Amount" of $339,710.44 and that "[t]he loan is in default for failure to pay amounts due, and the sums evidenced by the Note and security instruments are now due and payable in full."

23. On February 4, 2026, and again on February 13, 2026, Newrez told Plaintiff that the Loan was "due for 5/1/2026," a third due date inconsistent with the January statement. When Plaintiff asked for an official reinstatement letter because third parties still believed the home was going to auction, Newrez refused, writing that it was "unable to make that request now that the loan is current," and Plaintiff responded that he had received "NOTHING in writing" saying the Loan was not accelerated.

24. On information and belief, Newrez never countersigned the modification agreement that Plaintiff signed and returned on October 1, 2025.

25. Newrez furnishes information about the Loan to Equifax, Experian, and TransUnion, which each report it as a mortgage tradeline ("NR/SMS/CAL" on Experian and TransUnion; "SHELLPOINT MORTGAGE" on Equifax) under an account number beginning 692230.

26. Plaintiff's consumer reports from each Credit Bureau Defendant, generated October 7–8, 2026, report Plaintiff as past due on the Loan in 2025 as follows: on Experian, 180 days past due for seven consecutive months, April through October 2025; on TransUnion, 120 days past due for seven consecutive months, April through October 2025; and on Equifax, 120 days past due for six consecutive months, May through October 2025.

27. These reports are inaccurate, incomplete, and misleading in at least the following ways:

a) Each report shows the account moving in a single month from current (Equifax, April 2025) or from no data (Experian and TransUnion, March 2025) directly to 120 or 180 days past due, with no 30-, 60-, or 90-day delinquency preceding it;

b) The three Credit Bureau Defendants report different delinquency periods and severities (120 versus 180 days; six versus seven months; April–October versus May–October 2025) for the same loan reported by the same furnisher;

c) The reports show the Loan as seriously delinquent for months in which Newrez received and accepted Plaintiff's payments and had Plaintiff in loss mitigation;

d) Equifax reports the Loan's status as "Pays account as agreed" and TransUnion reports "Paid or paying as agreed" with a $0 past-due amount, while each reports six or seven months of 120-day delinquency, and Experian reports the Loan as "Open," labels the payment history "Exceptional," and simultaneously reports seven months at 180 days past due;

e) Experian and TransUnion report no data for January through March 2025 or for November and December 2025, while Equifax reports those months as on time, although Newrez serviced the Loan and received payments throughout; and

f) On information and belief, at least as of February 2026 Experian reported the Loan with the status "FORECLOSURE PROCEEDING STARTED," a payment status of foreclosure or repossession, a balance of $354,746, and a monthly payment of $3,511, none of which is consistent with the Loan's balance and payment at that time.

28. Between February 24 and September 15, 2026, Plaintiff, directly or through a credit-repair service acting at his direction, submitted repeated written disputes regarding the Newrez tradeline to Experian and Equifax, including in February, April, June, August, and September 2026. On October 7, 2026, Plaintiff sent a detailed written dispute to each of Equifax, Experian, and TransUnion identifying the specific inaccuracies described above and requesting that each Defendant forward the dispute to Newrez, compare the entries against Newrez's actual month-by-month payment records, describe its method of verification, and notify prior recipients of any correction.

29. Plaintiff's October 2026 Experian and TransUnion reports bear the notation that the account is disputed by the consumer. Plaintiff's Equifax report does not.

30. Plaintiff is informed and believes that each Credit Bureau Defendant forwarded notice of Plaintiff's disputes to Newrez, and that Newrez received that notice. Neither Newrez nor any Credit Bureau Defendant corrected or deleted the inaccurate information, and the inaccurate Newrez tradeline remains on Plaintiff's Equifax, Experian, and TransUnion consumer credit reports as of the filing of this Complaint.

31. At all relevant times, Newrez knew or should have known that the information it furnished concerning Plaintiff was false, inaccurate, and disputed, yet continued to furnish such information to consumer reporting agencies.

32. Cal. Civ. Code § 1788.17 mandates that every debt collector collecting or attempting to collect a consumer debt shall comply with the provisions of 15 U.S.C. §§ 1692b through 1692j, inclusive, and shall be subject to the remedies provided in 15 U.S.C. § 1692k.

33. Newrez's conduct violated the RFDCPA in multiple ways, including but not limited to:

a) Falsely representing the character, amount, or legal status of Plaintiff's debt (§ 1692e(2)(A)), including by stating in its January 3, 2026 statement that the Loan was accelerated and "due and payable in full" in the amount of $339,710.44 while simultaneously stating a $0.00 reinstatement amount, a next due date of February 1, 2026, and a contractual due date of April 1, 2026, and later stating a third due date of May 1, 2026;

b) Communicating or threatening to communicate credit information which is known or which should be known to be false (§ 1692e(8)), including by reporting the Loan to the Credit Bureau Defendants as 120 or 180 days past due for months in which Newrez received Plaintiff's payments, with inconsistent status information and, as to Experian, a foreclosure remark and balance inconsistent with Newrez's own records;

c) Using false representations and deceptive means to collect or attempt to collect a debt (§ 1692e(10)), including by the statements described above and by representing and collecting foreclosure-related fees and costs as owing on the Loan while Plaintiff was in loss mitigation and making payments Newrez accepted; and

d) Using unfair or unconscionable means to collect or attempt to collect a debt (§ 1692f), including by collecting foreclosure-related fees and costs not expressly authorized by the Loan documents or permitted by law under the circumstances, and by applying Plaintiff's payments to installments dating back to September 2024 in a manner that kept the Loan delinquent.

34. At all times pertinent hereto, Defendants were acting by and through their agents, servants and/or employees who were acting within the course and scope of their agency or employment, and under the direct supervision and control of Defendants herein.

35. At all times pertinent hereto, the conduct of Defendants, as well as that of their agents, servants and/or employees, was malicious, intentional, willful, reckless, and in grossly negligent disregard for federal and state laws and the rights of Plaintiff herein.

36. Newrez is aware that the credit reporting agencies to which it furnishes information will disseminate such information to third parties for purposes of extending credit, and that such dissemination has already occurred.

37. Defendants Equifax, Experian, and TransUnion are aware that the consumer credit information they disseminate is used by third parties for purposes of extending credit, and that such information has been and continues to be disseminated concerning Plaintiff.

38. The inaccurate information furnished and reported by Defendants negatively reflects upon Plaintiff, Plaintiff's credit repayment history, Plaintiff's financial responsibility as a debtor, and Plaintiff's creditworthiness.

39. On February 21, 2026, a Les Schwab Tire Centers representative told Plaintiff, in response to his request to move his credit account, that he would need to be "caught up on your past due mortgage account."

40. On June 16, 2026, First Tech Federal Credit Union declined Plaintiff's application for a share account, stating that it was "unable to validate the information provided" and that its decision was based in whole or in part on information obtained from Experian.

41. On July 14, 2026, Bayshore Mortgage Funding, LLC wrote to Plaintiff that he "would potentially qualify for a refinance or cash-out refinance," but that its investors allow no more than one mortgage late payment in the last 24 months, and stated:

> "ShellPoint mortgage reported your mortgage late multiple times during 2024/2025, as recent as September 2025. Due to this, unless guidelines change, the earliest date that you would potentially qualify for a

mortgage refinance is October 2027, if all the other factors of income and credit that are true today, remain true in October 2027."

42. On October 7, 2026, West Capital Lending, Inc. denied Plaintiff's application for credit and, in its Statement of Credit Denial, listed as its reason "***MORTGAGE LATES***" and disclosed that its decision was based in part on consumer reports from Equifax, TransUnion, and Experian.

43. As a direct and proximate result of Defendants' conduct, Plaintiff has been damaged, and continues to be damaged, in the following ways:

a) Emotional distress and mental anguish associated with having inaccurate and derogatory credit information transmitted about Plaintiff to third parties;

b) Harm to Plaintiff's credit and creditworthiness, including the denial of credit applications and the loss of the opportunity to refinance his mortgage until at least October 2027;

c) Reputational damage and loss of financial integrity as a result of being falsely associated with a seriously delinquent mortgage; and

d) Time, effort, and expense incurred in attempting to resolve Defendants' errors, including multiple disputes and communications with Newrez.

44. Defendant Equifax violated 15 U.S.C. § 1681e(b) by failing to follow reasonable procedures to assure the maximum possible accuracy of the information it reported concerning the Newrez tradeline, and violated 15 U.S.C. § 1681i by failing to conduct a reasonable reinvestigation of Plaintiff's disputes and by continuing to report the inaccurate Newrez tradeline despite Plaintiff's disputes and despite reason to know the information was inaccurate, and is liable to Plaintiff pursuant to 15 U.S.C. §§ 1681n and 1681o.

45. Defendant Experian violated 15 U.S.C. § 1681e(b) by failing to follow reasonable procedures to assure the maximum possible accuracy of the information it reported concerning the Newrez tradeline, and violated 15 U.S.C. § 1681i by failing to conduct a reasonable reinvestigation of Plaintiff's disputes and by continuing to report the inaccurate

Newrez tradeline despite Plaintiff's disputes and despite reason to know the information was inaccurate, and is liable to Plaintiff pursuant to 15 U.S.C. §§ 1681n and 1681o.

46. Defendant TransUnion violated 15 U.S.C. § 1681e(b) by failing to follow reasonable procedures to assure the maximum possible accuracy of the information it reported concerning the Newrez tradeline, and violated 15 U.S.C. § 1681i by failing to conduct a reasonable reinvestigation of Plaintiff's disputes and by continuing to report the inaccurate Newrez tradeline despite Plaintiff's disputes and despite reason to know the information was inaccurate, and is liable to Plaintiff pursuant to 15 U.S.C. §§ 1681n and 1681o.

47. Defendant Newrez violated Cal. Civ. Code § 1785.25(a) by furnishing information concerning Plaintiff to consumer reporting agencies despite knowing or having reason to know that the information was incomplete or inaccurate.

48. Defendants' conduct was a direct and proximate cause, and a substantial factor, in causing the injuries, damages, and harm to Plaintiff described above, and Defendants are liable to Plaintiff for statutory, actual, and punitive damages, together with attorneys' fees and costs, and such other relief as permitted by law.

## COUNT I: VIOLATION OF ROSENTHAL FAIR DEBT COLLECTION PRACTICES ACT
## (Against Defendant Newrez only)

49. Plaintiff reincorporates by reference all of the preceding paragraphs.

50. To the extent that Defendant's actions, counted above, violated the RFDCPA, those actions were done knowingly and willfully.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully prays that judgment be entered against Defendant for the following:

A. Actual damages;

B. Statutory damages for willful and negligent violations;

C. Costs and reasonable attorney's fees; and

D. For such other and further relief as may be just and proper.

**COUNT II: VIOLATION OF THE**
**CALIFORNIA CONSUMER CREDIT REPORTING AGENCIES ACT**
**(Against Defendant Newrez only)**

51. Plaintiff incorporates the foregoing paragraphs as though the same were set forth at length herein.

52. California Civil Code § 1785.25(a) states that a "person shall not furnish information on a specific transaction or experience to any consumer credit reporting agency if the person knows or should know the information is incomplete or inaccurate."

53. Based on these violations of Civil Code § 1785.25(a) by Defendant, Plaintiff is entitled to the remedies afforded by Civil Code § 1785.31, including actual damages, attorneys' fees, pain and suffering, injunctive relief, and punitive damages in an amount not less than $100 and not more than $5,000 for each violation as the Court deems proper.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that judgment be entered against Defendant for the following:

A. Actual damages, including pain and suffering;

B. Punitive damages of not less than $100 and not more than $5,000 per violation pursuant to Cal. Civ. Code § 1785.31;

C. Injunctive relief pursuant to Cal. Civ. Code § 1785.31;

D. Costs and reasonable attorney's fees; and

E. For such other and further relief as the Court may deem just and proper.

**COUNT III: VIOLATION OF THE FAIR CREDIT REPORTING ACT**
**(Against Defendants Equifax, Experian, and TransUnion)**

54. Plaintiff reincorporates by reference all of the preceding paragraphs.

55. To the extent that Defendants' actions, counted above, violated the FCRA, those actions were done knowingly and willfully.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully prays that judgment be entered against Defendants Equifax, Experian, and TransUnion for the following:

A. Actual damages;

B. Statutory damages for willful violations pursuant to 15 U.S.C. § 1681n;

C. Punitive damages for willful violations pursuant to 15 U.S.C. § 1681n;

D. Costs and reasonable attorney's fees; and

E. For such other and further relief as may be just and proper.

**PLAINTIFF HEREBY REQUESTS A TRIAL BY JURY**

Plaintiff, pursuant to Federal Rule of Civil Procedure 38(b) and the Seventh Amendment to the United States Constitution, demands a trial by jury on all issues so triable.

///

Respectfully submitted this 12th day of October, 2026.

By: Todd M. Friedman

Todd M. Friedman, Esq.

**Law Offices of Todd M. Friedman, P.C.**

*Attorney for Plaintiff*